UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHARLES A. BENSON,

    Plaintiff,

    v.                                       CAUSE NO. 3:18-CV-651-RLM-MGG

E. PARKIN, et al.,

    Defendants.

OPINION AND ORDER

Charles A. Benson, a prisoner without a lawyer, proceeds against Officer D. Petty on a First Amendment retaliation claim, Sergeant E. Parkin on an excessive-force claim, and Captain L. Barkas on a failure-to-intervene claim. The defendants moved for summary judgment. Mr. Benson responded, but the defendants didn't reply.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. Ogden v. Atterholt, 606 F.3d 355, 358 (7th Cir. 2010).

Mr. Benson didn't respond to the defendants' argument that summary judgment was appropriate on the First Amendment retaliation claim against Officer Petty. "To prevail on his First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citation omitted). Mr. Benson alleged that Ofc. Petty convinced two other officers to file false conduct reports against him in retaliation for grievances he's filed. The defendants argue that the most recent grievance Mr. Benson had filed against Ofc. Petty was eleven months earlier and too far removed in time to support an inference that it was a motiving factor. *See* Feldman v. Olin Corp., 692 F.3d 748, 757 (7th Cir. 2012) ("[T]he eight-month period between the latest filing and [plaintiff's] suspension in May 2008 is too long, absent some other evidence, to establish a causal connection between the two."). Even construing Mr. Benson's filings liberally, the court finds Mr. Benson doesn't provide evidence to create a material dispute for trial. *See* Nichols v. Mich. City Plant Planning Dep't, 755 F.3d 594, 600 (7th Cir. 2014).

Edwards v. Balisok, 520 U.S. 641 (1997) and Heck v. Humphrey, 512 U.S. 477 (1994) bar Mr. Benson's retaliation claim. The deprivation he identifies are conduct reports he claims are false. Those conduct reports resulted in losing

2

good time credit and a demotion in credit class, and both were upheld in federal habeas corpus petitions. *See* Benson v. Warden, No. 3:18-cv-670-DRL-MGG (N.D. Ind. filed Aug. 29, 2018) (ECF 32); Benson v. Warden, No. 3:18-cv-671-DRL-MGG (N.D. Ind. filed Aug. 29, 2018) (ECF 24). Mr. Benson can't pursue a § 1983 claim for damages that would imply the invalidity of the conduct reports until those disciplinary charges are overturned. *See* Edwards v. Balisok, 520 U.S. at 648; Heck v. Humphrey, 512 U.S. at 486-87.

Although the defendants didn't raise a Heck-Edwards defense in their summary judgment motion, the court won't find the defense waived. *See* Polzin v. Gage, 636 F.3d 834, 837-38 (7th Cir. 2011). A federal court has already examined the conduct reports in Mr. Benson's two habeas corpus petitions, and a contrary finding in this case would directly contradict those cases. Moreover, this isn't an ambiguous application of Heck-Edwards. *Cf.* Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 862-663 (7th Cir. 2004) (noting that there may be "reasons that are not apparent from the record . . . that *Heck* is not applicable to those claims" and declining to forgive defendants' waiver); *see also* Carr v. O'Leary, 167 F.3d 1124, 1127 (7th Cir. 1999) (noting "the principle that treats the waiver of defenses based on grounds rooted in considerations of state sovereignty less harshly than other waivers"). Accordingly, Mr. Benson can't argue in this case that the conduct reports were fabricated, and this claim will be dismissed without prejudice.

Turning to the excessive force claim, on June 5, 2018, inmates flooded the cell block where Mr. Benson was housed, though he wasn't involved. Mr. Benson

3

was accused of assaulting two officers during the cleanup by "tossing an unknown liquid through the crack in [his cell] door" and hitting them. ECF 62-4 at 1. Mr. Benson was written up and a few hours later placed on "strip-cell" status because of it. That meant that all his property would be removed except a few necessary items. To carry this out, Sgt. Parkin asked Mr. Benson to submit to mechanical restraints so that he could be removed from his cell. Mr. Benson refused. He said he didn't feel safe coming out unless the encounter was videotaped or the supervisor, Captain Barkas, were present to ensure he wouldn't be harmed. According to Mr. Benson, he didn't otherwise resist or block entry into his cell.

Sgt. Parkin sprayed a chemical agent into Mr. Benson's cell three times before Mr. Benson agreed to cuff up. Sgt. Parkin used a wand attached to a cannister containing OCV.[1] Mr. Benson describes this as "the biggest OCV can normally used for [a] large area, group fights, or extreme measures." ECF 72 at 2. According to Sgt. Parkin, he first applied a 3-second burst, then 10-20 minutes later a 2-second burst that emptied the can, and then a third burst of

---

[1] Mr. Benson included a picture of the spray used. ECF 62-1. That particular chemical agent consisted of 10% OC and 2% CS (2-Chlorobenzalmalononitrile). Combined Tactical Systems, Product Specifications, https://www.combinedsystems.com/wp-content/uploads/2020/06/CTS-MK-9-Aerosol-Defense-Various-NEW-REV-D.pdf (last visited Feb. 4, 2021). OC (oleoresin capsicum) is "found in the oily resin of cayenne and other varieties of peppers—the same peppers used to 'heat up' spicy foods. Contact with OC particles in a sprayed mist incapacitates subjects by inducing an almost immediate burning sensation of the skin, but more important a burning, tearing, and swelling of the eyes. When the agent is inhaled, the respiratory tract is inflamed, resulting in a swelling of the mucous membranes lining the breathing passages and temporarily restricting breathing to short shallow breaths." National Institute of Justice, *Oleoresin Capsicum: Pepper Spray as a Force Alternative*, (March 1994) https://www.ncjrs.gov/pdffiles1/nij/grants/181655.pdf. CS (orthochlorobenzalmalononitrile) is a more traditional tear gas agent and "also cause[s] painful tearing and respiratory discomfort but do[es] not have the same inflammation and swelling effects as OC. The distinction is important because subjects who are extremely agitated, mentally ill, or under the influence of drugs or alcohol may not feel the pain and, thus, may not be affected (or as affected) by the spray." *Id.*

unspecified length after he retrieved a new can. ECF 62-2. Mr. Benson contents that Sgt. Parkin sprayed it for much longer:

> When Sgt. Parkin[] utilized this chemical agent on he me used more than a 3 second burst of the OVC MK90, which caused me to choke and hard to breathe. The second time he sprayed so much that he ran out and had to retrieve another can. Then the third and final time he sprayed through my cuffport so much I tried to grab it and he pulled it back and started spraying again.

ECF 72 at ¶ 9 (citation omitted). It's undisputed that Mr. Benson was given the opportunity to cuff up before each application and he refused.

Mr. Benson pushed the emergency call button in his cell for help after the third application of OCV, and agreed to cuff up. He was restrained, read the OC administration warning, and then given a shower to decontaminate. He was taken to medical for evaluation and was not noted to be in distress. He offered no complaints other than a scratch to his right index finger.

The "core requirement" for an excessive force claim under the Eighth Amendment is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." Hendrickson v. Cooper, 589 F.3d 887, 890 (7th Cir. 2009) (quotation marks and citation omitted). Several factors guide the inquiry of whether an officer's use of force was legitimate or malicious, including the need for an application of force, the amount of force used, and the extent of the injury suffered by the prisoner. *Id.* An inmate can't refuse to comply with a direct order from a correctional officer. An officer is justified in using some level of force to obtain compliance of an inmate who refuses an order. *See* Lewis v. Downey, 581

5

F.3d 467, 476-477 (7th Cir. 2009); Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984).

Mr. Benson first argues that the use of any chemical agent was inappropriate because he wasn't acting aggressively or confrontational at the time and simply wanted there to be a video camera or a supervisor present before he complied. In Soto v. Dickey, the court of appeals approved of the use of mace in this very situation—where an inmate "refuses to come to the front of the cell to be handcuffed after being ordered to do so" without needing evidence of aggression. 744 F.2d at 1265. Mr. Benson asserts that he would have cuffed up once there was a camera or a supervisor present. But "[i]nmates cannot be permitted to decide which orders they will obey, and when they will obey them." *Id.* at 1267.

Mr. Benson argues that Sgt. Parkin used a more potent form of chemical agent than necessary. He says that when Sgt. Parkin "came to [his] cell from the very first time he already had the biggest OCV can normally used for a[ ] large area, group fights, or extreme measures," ECF 72 at ¶ 2, and instead he should have used the type of "OC spray every officer [is] aut[h]orized with" and carries around. ECF 73 at 6-7. Mr. Benson has been sprayed before with "the little cans that they carry around in the building" as opposed to the "big can" Sgt. Parkin used. ECF 62-1 at 45: 12-18. Even when the use of a chemical agent is permitted, "it is a violation of the Eighth Amendment for prison officials to use mace or other chemicals agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." Soto v. Dickey, 744 F.2d at 1270. The

summary judgment record doesn't support Mr. Benson's assertion that this is an improper use of the "big can." His personal experience being sprayed with the "little cans" doesn't provide a basis to know the proper use of the "big can."

The dispute about how long Sgt. Parkin administered the OCV spray isn't material. Mr. Benson argues that the amount of OCV Sgt. Parkin sprayed violates the Eighth Amendment. Yet assuming each spray went longer than Sgt. Parkin claimed, it is hard to argue that they were excessive: Mr. Benson didn't comply and chose to endure another application rather than cuff up. At some point, a spray could be considered excessive even with continued noncompliance to an order. But Mr. Benson suffered none of the severe complications possible upon serious exposure to chemical agents, such as eye injuries, skin rashes or burns, or long-term respiratory injuries, suggesting the sprays were within a tolerable limit. *See* R. David Tidwell and Brandon K. Willis, *Tear Gas and Pepper Spray Toxicity*, (Nov. 4, 2020), https://www.ncbi.nlm.nih.gov/books/NBK544263/. OCV spray is supposed to be unpleasant, and there's no disputed material factual dispute that the use went too far in this case.

Mr. Benson's claim against Cpt. Barkas must also be dismissed. Because there was no excessive force, she can't be held liable for failing to intervene. Abdullahi v. City of Madison, 423 F.3d 763, 767-768 (7th Cir. 2005).

For these reasons, the court:

(1) DISMISSES the First Amendment retaliation claim without prejudice;

(2) GRANTS the defendants' motion for summary judgment (ECF 62); and

(3) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

SO ORDERED on February 16, 2021.

s/ Robert L. Miller, Jr.  
JUDGE  
UNITED STATES DISTRICT COURT